IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| In Re: | Chapter 13 |
|---|---|
| Bruno Ranieri | Case No. 15-20765 |
| Debtor | Honorable Judge A. Benjamin Goldgar |

**21ST MORTGAGE CORPORATION'S RESPONSE AND OBJECTION TO DEBTOR'S MOTION TO FOR CONTEMPT OF ORDER CONFIRMING PLAN (DOC. NO. 61)**

Now Comes, 21st Mortgage Corporation, by and through its Counsel, Quintairos, Prieto, Wood & Boyer P.A., ("Creditor")[1], and hereby responds and objects to Debtor, Bruno Ranieri's ("Debtor") Motion for Contempt of Order Confirming Plan ("Motion") (Doc. No. 61), and in support states that:

## FACTS AND PROCEDURAL HISTORY

1. On June 15, 2015, Debtor filed a voluntary petition (Doc. No. 1) pursuant to Chapter 13 of the Bankruptcy Code.[2]

2. Creditor holds a security interest in the real property, located at 1151 Franklin Street, Mundelein, Illinois, 60060 ("Property"), by virtue of a note and junior mortgage which was assigned to Creditor, and recorded December 18, 2012, with the Lake County Recorder's Office, as Document No. 6935902, in the amount of $96,000.00. (*See,* Claim 2-1).

3. On October 07, 2015, Debtor filed an Amended Chapter 13 Plan ("Plan") with this Court (Doc. No. 23), and Creditor filed its Objection to Confirmation of the Plan on October 10, 2015 (Doc. No. 24).

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

[2] 11 U.S.C. § 101 *ff*. Any reference to "Section" or "Code" or "Rule" is a reference to the Bankruptcy Code and associated rules unless another reference is stated.

4. On October 7, 2015, Debtor filed a motion Pursuant to Section 506(a) and Rule 3012 to Determine the Value of the Property (Doc. No. 21) and on October 22, 2015 Creditor filed a response in opposition to Debtor's motion to Determine the Value of the Property (Doc. 30).

5. On October 20, 2015, the Chapter 13 Trustee ("Trustee") filed an objection to discharge pursuant to Section 1328(f) (Doc. No. 29) because the Debtor received a discharge in a prior Chapter 7 case filed within the past four years of the instant Chapter 13 case. The Court granted the Trustee's motion and entered an order denying the Debtor a discharge on November 19, 2015 (Doc. No. 36).

6. On October 30, 2015, Creditor withdrew its Objection to Confirmation of the Plan (Doc. No. 35) and subsequently Debtor filed an Objection to Creditor's Claim (Doc. No. 44) alleging that the Debtor has no personal liability on the claim due to the prior Chapter 7 discharge and alleging that any liability, if any, is unsecured due to the pending motion to value claim (Doc. No. 44, ¶¶ 8-12).

7. On March 11, 2016, the Court held the confirmation hearing and entered orders: granting the motion to determine value of Creditor's lien ("Valuation Order") (Doc. No. 50); sustaining Debtor's objection to Creditor's claim (Doc. No. 51) and an order confirming Debtor's Plan ("Confirmation Order") (Doc. No. 54).

8. The case then proceeded unremarkably for the next two years and the Trustee filed his Notice of Completion of Plan Payments on September 7, 2018 (Doc. No. 57). The Court closed the instant proceeding and discharged the Trustee on October 18, 2018 (Doc. No. 59).

9. However, as discussed, *supra*, despite the Debtor completing Plan payments and the Court closing the case, the Debtor did not receive a discharge because he received a discharge within 4 years of the instant case in proceedings under Chapter 7.

10. Debtor filed the instant Motion on December 10, 2018 alleging, *inter alia*, that on November 12, 2018 Creditor mailed Debtor a mortgage statement showing a payment amount of $62,925.38 and that Creditor has not released its lien on the Property (Doc. No. 61., Motion ¶¶ 16-17).

11. In sum, Debtor claims Creditor's actions are in violation of the confirmation order because Creditor failed to release its lien against the Property within 30 days of the completion of Plan payments. (Motion, ¶ 24). The Court should deny Debtor's motion, *with prejudice*, because the order avoiding lien was contingent upon entry of discharge, the model plan used in this case requires discharge for avoidance of a lien, and principles of res judicata do not apply to the provision of the plan purporting to avoid Creditor's lien.

## ARGUMENT

### I. The Valuation Order was contingent upon completion of the Plan *and* discharge.

12. The Valuation Order entered by this Court is very clear and unambiguous:

> IT IS HEREBY ORDERED that the relief requested in the motion in favor of the debtor(s) and against the creditor is granted as follows:
>
> 1. For **purposes of the Chapter 13 plan only**, any claims asserted by the creditor stemming from its Second mortgage lien against the property are entirely unsecured pursuant to 11 U.S.C. § 506 (a) given the value of the property and the amount of senior liens.
>
> 2. Any timely filed proof of claim of the creditor for the Second mortgage lien will be treated as an unsecured claim **in the Chapter 13 plan**.
>
> 3. Upon completion of the Chapter 13 plan **and entry of a discharge**, the creditor's lien will be deemed satisfied pursuant 11 U.S.C. §§ 1322(b)(2), 1327 and 1328(a). (Doc. No. 50.) (emphases supplied).

13. Only "[u]pon completion of the Chapter 13 plan *and* entry of a discharge, the creditor's lien will be deemed satisfied pursuant 11 U.S.C. §§ 1322(b)(2), 1327 and 1328(a)." (Doc. No. 50) (emphasis supplied).

14. As stated, *supra*, Debtor did not receive, and cannot receive a discharge in the instant proceeding due to his prior filing of a chapter 7 within four years of the instant case. Accordingly, pursuant to the terms of the Valuation Order, alone, this Court should deny Debtor's motion.

> **II.  When a Debtor does not receive a discharge any modifications to a Creditor's rights imposed in the plan are not permanent and have no binding effect once the terms of the plan end.**

15. Debtor in this case is attempting a maneuver colloquially referred to as "Chapter 20." This procedure is a two part process wherein the Debtor wishes to eliminate personal liability on an underlying note by first filing chapter 7 without reaffirming on the mortgage, then proceeds to file a chapter 13 to cure any mortgage arrears that remain to avoid an *in-rem* state court action by the Creditor to enforce its security interest (or in this case, make the bold move to attempt a strip-off of the junior lien entirely). Courts ruling on the propriety of this maneuver generally fall within two schools of thought. According to the majority of courts to rule on the issue, the lien is removed only upon completion of all plan payments *or* entry of the debtor's discharge. *In re Orkwis*, 457 B.R. 243, 249 (Bankr. E.D.N.Y. 2011) (canvassing cases). Some courts, however, have taken the opposite position, finding that the lien is removed upon completion of the plan payments in the Chapter 13 case, regardless of whether the debtor obtains a discharge. *Id.*

16. For confirmation of a chapter 13 plan, Section 1325(a)(5) requires that the plan provides for a holder of a secured claim retain the lien securing the claim until the earlier of the payment of the underlying debt as determined under nonbankruptcy law or discharge under section 1328. This Court has already ruled that Debtor is not entitled to a discharge in this proceeding. Therefore, Creditor retains the lien until payment of the underlying debt as determined by nonbankruptcy law, that is, until the debt is paid in full. Any "lien strip" would occur at

discharge. *In re Fenn*, 428 B.R. 494, 500 (Bankr. N.D. Ill. 2010); *In re Jarvis*, 390 B.R. 600, 607 (Bankr.C.D.Ill.2008); *In re Lilly*, 378 B.R. 232, 236 (Bankr.C.D.Ill.2007); *In re King*, 290 B.R. 641, 651 (Bankr.C.D.Ill.2003); *In re Brinson*, 485 B.R. 890, 897 (Bankr. N.D. Ill. 2013) (citing *Fenn* in the tax lien avoidance context); *In re Turner*, 558 B.R. 269, 283 (Bankr. N.D. Ill. 2016); *In re Erdmann*, 446 B.R. 861, 867 (Bankr. N.D. Ill. 2011).

17. The *Lilly* court held that "[w]here a debtor does not receive a discharge, however, any modifications to a creditor's rights imposed in the plan are not permanent and have no binding effect once the term of the plan ends [...] This long-standing principle was not altered by BAPCPA." *Lilly*, 378 B.R. at 236. The *Jarvis* court held that "[t]he actual "strip off" occurs not at confirmation, but rather at discharge." *Jarvis*, 390 B.R. at 607.

18. *In re King* also addresses the issue of when the strip off or avoidance of liens occurs. The *King* court stated "[c]onsistent with its past practice, this Court also holds that the lien-avoiding effect of the confirmed plan, while established at confirmation, is contingent upon a discharge pursuant to Section 1328." *King*, 290 B.R. at 651. The *King* court continued and explained that "[i]f, *for any reason*, the Debtors do not receive a discharge under Section 1328, [Creditor's] mortgage lien remains in effect." *Id*. *(emphasis added)*.

19. Indeed, this Court seemingly agrees with the logic of the Bankruptcy judges cited above based on the language in the valuation order (*See* ¶ 12, *supra*).

20. It is apparent, based on the terms of the Valuation Order, that the contemplated scope of the Order was only to encompass treatment of Creditor's lien within the metes and bounds of the Plan.

21. The 2005 BAPCPA amendment added to Section 1325(a)(5), subsection (B)(i)(I), which specifically requires that the lien be retained until the earlier of (aa) payment of the debt

determined under nonbankruptcy law or (bb) discharge under section 1328. *In re Fenn*, 428 B.R. 494, 503 (Bankr. N.D. Ill. 2010). That amendment was enacted to prevent chapter 13 debtors from paying the secured claim as provided for in the plan and obtaining a release of the creditor's lien prior to obtaining a Chapter 13 discharge. *Id.* Allowing the Debtor to avoid Creditor's junior mortgage lien under the terms of the Plan would offend this congressional policy.

### III.   The model plan of this District in use at the time of confirmation does not allow for lien stripping without discharge.

22. The wrinkle here is that the Debtor slipped in a special provision in section G of the model plan which conflicts with a standard term of the model plan.[3] Specifically, Debtor attempted to circumvent the Bankruptcy Code and model plan requirement that discharge is a requirement for lien avoidance by omitting any reference to discharge in section G. (*See,* Doc. No. 23, § G.)

23. The Model Plan adopted by the judges in this district, which was used here, provides in § B(3) that a claim secured by a lien on property of the estate remains until the debt supporting the lien is satisfied or a discharge is entered under section 1328.[4]  "This section simply puts the requirements of section 1325(a)(5) into every plan." *In re Erdmann*, 446 B.R. 861, 867 (Bankr. N.D. Ill. 2011). Debtors, however, may amend the language in the Model Plan through the use of special terms in Section G. Here, the Debtor used section G to alter § B(3)

---

[3] Rule 3015 was amended on December 1, 2017 and now mandates a new national form to be used in all Chapter 13 cases nationwide unless the district opts out. https://www.uscourts.gov/news/2017/12/01/new-bankruptcy-form-rules-take-effect. The model plan for the Northern District of Illinois at the time of confirmation (and the plan used in this proceeding) can be found at: https://www.ilnb.uscourts.gov/sites/default/files/forms/Form13-4.pdf.

[4] The Plan used in this case is no longer the plan of this District (*see,* Fn. 3*).* Part 3 of Section B of the Model Plan states "The holder of any claim secured by a lien on property of the estate, other than a mortgage treated in Section C or in Paragraph 2 of Section E, shall retain the lien until the earlier of (a) payment of the underlying debt determined under nonbankruptcy law, or (b) discharge under 11 U.S.C. § 1328, at which time the lien shall terminate and be released by the creditor."

to provide that Creditor's "second mortgage lien shall be stripped and avoided from the aforementioned property upon completion of plan payments as provided for in the Debtor's Chapter 13 Plan."

24. As stated, *supra*, the majority of courts and commentators taking up this issue require that a discharge be entered prior to the lien being removed. *Id.* at 868. Notwithstanding the language of Section G in the Model Plan, which allows any part of the Model Plan to be modified through special terms, Section B(3) may not be altered in a way that is contrary to section 1325(a)(5) of the Code. *Id.* A lien cannot be avoided prior to discharge entered under section 1328. *Id.*

25. The changes in Paragraph B(3) of the model Plan were made to incorporate changes made by BAPCPA to Section 1325(a)(5) of the Bankruptcy Code, and those amendments were intended to increase the protection of secured creditors' lien rights, not diminish them. *In re Turner*, 558 B.R. 269, 283 (Bankr. N.D. Ill. 2016). The version of Paragraph B(3) used here tracks the changes made to Section 1325(a)(5) by BAPCPA to add the temporal requirement that the lien be retained until the earlier of discharge or payment of the full underlying debt. *Id.* As the bankruptcy court explained in *In re Lilly*, "[t]he new language added by BAPCPA clarifies that the plan must permit the lien to be retained until the earlier of payment of the debt determined under nonbankruptcy law or a discharge under Section 1328" and "overrules the results of those prior cases that permitted elimination of the creditor's lien upon payment of the allowed secured claim." 378 B.R. 232, 235 (Bankr. C.D. Ill. 2007).

    **IV.** **The Court should not afford res judicata effect to the confirmation order because the provision sought to be upheld do not comply with the Bankruptcy Code or the model Plan.**

26. Plaintiff takes Section 1327(a), out of context, and reaches an incorrect conclusion. It is true that section 1327(a) of the Bankruptcy Code states that "[t]he provisions of a confirmed plan

bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." *In re Bare*, 284 B.R. 870, 875 (Bankr. N.D. Ill. 2002).

27. Notwithstanding the general rule regarding the res judicata effect of confirmation orders, the doctrine does have limits. For example, in *In re Escobedo*, 28 F.3d 34 (7th Cir.1994), the Seventh Circuit considered specifically the status of a validly confirmed plan that failed to provide for the full payment of priority claims mandated by Section 1322(a)(2). It noted that under 11 U.S.C. § 1325(a)(1), "[a] bankruptcy court lacks the authority to confirm any plan unless it complies with the provision of this chapter and with the other applicable provisions of this title." *Id*. at 35. *Escobedo* held that in light of the plan's failure to comply with mandatory requirements, the confirmation was invalid in that respect and therefore had "no res judicata effect as to the omitted priority claims." *Id*.

28. Bankruptcy courts have applied the reasoning in *Escobedo* to other areas to deny preclusive effect to confirmation orders. For instance, in *In re Bare,* the court was not constrained either by bankruptcy statute describing preclusive effects of confirmed plan or by doctrine of res judicata from revisiting a confirmed plan for limited purpose of ruling on an issue involving set-off rights of the IRS. 284 B.R. 870, 875 (Bankr. N.D. Ill. 2002).

29. In *In Re Carr*, the court held that a plan that modified the rights of a secured lender failed to comply with Section 1322(a)(2) and as a result, the confirmation was "nugatory and properly dismissed." 318 B.R. 517, 520 (Bankr. W.D. Wis. 2004). In so holding, the court vacated a confirmation order because it failed to comply with Section 1322(a)(2).

30. This case is factually different, but not different in principle from *Escobedo* and *Carr*. Accordingly, this Court should not afford preclusive effect to Section G of the Confirmation

Order which requires Creditor to release its lien; particularly here, where that issue was addressed in two separate motions and a separate order.

31. As noted above, the Bankruptcy Code and the model Plan in place at confirmation of this Plan only allowed for strip off in a Chapter 13 case upon full payment of the debt to the secured creditor or entry of a discharge – neither of which occurred here. This Court should not afford preclusive effect to the provision in this Plan that was slipped in by the Debtor in order to circumvent the Bankruptcy Code and the intent of the model plan.

> **V. The Valuation Order is entitled to preclusive effect and because it was entered prior to the Confirmation Order, the Valuation Order controls vis-à-vis any contrary provisions contained in the Confirmation Order.**

32. In the instant matter the Court is faced with two conflicting orders: the Valuation Order which deems Creditor's lien satisfied upon completion of plan payments *and* discharge, and the special provisions of the confirmed plan which state Creditor's lien is valued at zero upon completion of plan payments.[5] These competing provisions cannot coexist: one requires discharge and one does not. The question then that naturally follows – which order controls, the Valuation Order, or order confirming Debtor's plan?

33. In bankruptcy practice, it's axiomatic that the confirmation order has preclusive effect; however, the Valuation Order also has preclusive effect. Claim preclusion under federal law has three elements: (1) an identity of the parties or their privies; (2) an identity of the causes of action; and (3) a final judgment on the merits. *In re marchFirst, Inc.*, 448 B.R. 499, 511 (Bankr. N.D. Ill. 2011) (citations omitted). The Valuation Order here also has preclusive effect because it involves the same parties, involves the same issue (value) and was a final judgment on the merits (Creditor objected and the Court entered a final order).

---

[5] It should be noted that Debtor's counsel drafted the Valuation Order and so any ambiguities in that order should be construed against the Debtor. *See, In re River Rd. Hotel Partners, LLC*, 520 B.R. 691, 703 (Bankr. N.D. Ill. 2014).

34. So, both orders have preclusive effect – which controls? In this case, the Valuation Order controls because that order was entered prior to the confirmation order. *Unger v. Consolidated Foods Corp.*, 693 F.2d 703, 705 (7th Cir.1982) ("As between two actions pending at the same time, the first of two judgments has preclusive effect on the second.").

35. "If two actions are pursued simultaneously the first judgment to be entered is entitled to res judicata effect without regard to the order in which the two were commenced...." *Id. at 515-516* (this Court held, in another proceeding, with respect to an adversary proceeding and an amended administrative expense request, that the order which was entered first, regardless of when the proceedings were commenced was the controlling order).

36. *"When cases proceed in parallel, the first to reach judgment controls the other, through claim preclusion (res judicata)." Id.* (citing *Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832, 838 (7th Cir.1999); *Carr v. CIGNA Sec., Inc.*, 95 F.3d 544, 546 (7th Cir.1996); *Unger v. Consolidated Foods Corp.*, 693 F.2d 703, 705 (7th Cir.1982)).

37. A review of the docket in this case shows that the Valuation Order (Doc. No. 50) appears sequentially prior to the Confirmation Order (Doc. No. 54) – albeit on the same day. However, a closer look reveals that the Valuation Order was "entered" on March 14, 2016 and the Confirmation Order was "entered" on March 17, 2016 – nearly three days later. Indeed, there was no other way this court could have entered these orders because the pending motion to value and the related objection to Creditor's claim had to be resolved before this Court could confirm Debtor's plan.

38. The difference in time between when the orders were signed, filed and entered is actually significant under the Bankruptcy Rules. The most important date is the "entered" date because "it is entry of a document or activity that triggers duties and time limitations." *In re*

Document Page 11 of 12

*Henry Bros. P'ship*, 214 B.R. 192, 195 (B.A.P. 8th Cir. 1997) (analyzing the bankruptcy rules with respect to timeline to appeal).

39. The court in *In re Henry Bros.* explains the paradigm as follows:

> A document is signed when a signature is affixed by the judge or clerk. The date of signing has little, if any, meaning under either the Federal Rules of Bankruptcy Procedure or the Federal Rules of Civil Procedure. The signing of the order or judgment by the judge does not constitute an "entry" by the judge. The entry occurs when it is noted on the docket and thereby becomes public."
>
> A document is filed when it is delivered into the actual custody of the proper officer, a clerk, authorized deputy, or a judge. To be filed, the document must be delivered and received, not merely sent through the United States mail. A document is entered when the clerk makes the notation on the official public record, the docket, of the activity or submission of the particular document. The Federal Rules of Bankruptcy Procedure require the clerk to give notice of the entry of a judgment or order to the contesting parties. *Id.*

40. "It may seem unfair that this principle means a judgment holding a later action barred under a statute of limitations can preclude an earlier action not barred under the same statute. But fairness, the Supreme Court has said, is achieved by 'application of accepted principles of res judicata,' not judicial notions of 'simple justice'" *In re marchFirst, Inc.*, 448 B.R. 499, 511 (Bankr. N.D. Ill. 2011) (citing, *Federated Dep't Stores*, 452 U.S. at 401, 101 S.Ct. 2424).

41. Based on the analysis above, it is clear that the Valuation Order was "entered" prior to the Confirmation Order. Accordingly, this court should apply preclusive effect to the Valuation Order with respect to any conflicting provisions contained in the Confirmation Order.

## **CONCLUSION**

42. This Court should deny Debtor's Motion for Contempt of Order Confirming Plan because the Valuation Order entered by this Court clearly contemplated that Creditor's lien would only be released upon payment of the underlying obligation, because the Bankruptcy Code and model Plan promulgated by this District required payment of the obligation or discharge for a strip-off in a Chapter 13 to be effectuated and because between the Valuation Order and the

Confirmation order preclusive effect should be given to the Valuation Order as to any terms that conflict with the Confirmation Order.

**WHEREFORE**, Creditor, 21st Mortgage Corporation, for all the above stated reasons respectfully requests that the Debtor, Bruno Ranieri's Motion for Contempt of the Confirmation Order be denied, *with prejudice*, and for such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Dated:  February 1, 2019

/s/ Damon G. Newman
Damon Newman, Esq.
Quintairos, Prieto, Wood & Boyer, P.A.
Willis Tower
233 South Wacker Drive, 70th Floor
Chicago, Illinois 60606 US
damon.newman@qpwblaw.com
Phone: (312) 566-0040
Fax: (312) 566-0041