## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| In Re: | Case No. 1:15-bk-20765 |
| BRUNO RANIERI | Chapter 13 |
| Debtor(s) | Honorable A. Benjamin Goldgar |

## DEBTOR'S REPLY IN SUPPORT OF MOTION
## FOR CONTEMPT OF ORDER CONFIRMING PLAN

BRUNO RANIERI ("Debtor"), through counsel, SULAIMAN LAW GROUP, LTD., hereby submits his Reply in Support of Motion for Contempt of Order Confirming Plan. In support thereof, Debtor states as follows:

### ARGUMENT

"Nothing in the Bankruptcy Code precludes a debtor who is not eligible for a discharge from filing a chapter 13 case, obtaining confirmation of a chapter 13 plan, and with the exception of the right to a discharge, from enjoying all the rights of a chapter 13 debtor, including the right to strip off liens." *In re Tran*, 431 B.R. 230 (Bankr. N.D. Cal. 2010).

**I.  The right to modify secured claims in chapter 13 is universally accepted, and that right, permits debtors to strip off wholly unsecured mortgages without a discharge.**

Since the Bankruptcy Code was enacted in 1978, debtors' ability to modify creditors' rights in chapter 13 has been explicit and broad. The plain language of section 1322(b)(2) permits debtors to "modify the rights of holders of secured claims … or holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." In creating this section of the Code,

Congress made a definitive and significant departure from the former chapter XIII of the Bankruptcy Act of 1898, which gave debtors no effective way for dealing with secured creditors.[1]

This ability to modify creditors' rights in chapter 13 is constrained by a limited exception for claims only secured by a security interest in real property that is the debtor's principal residence. 11 U.S.C. § 1322(b)(2). This special protection for residential mortgages applies only if the creditor has an "allowed secured claim" as determined by section 506(a). *See Nobleman v. American Sav. Bank*, 508 U.S. 324 (1993). The rights protected by anti-modification provision of section 1322(b)(2) include the "right to repayment of the principal in monthly installments over a fixed term at specified adjustable rates of interest, the right to retain the lien until the debt is paid off, the right to accelerate the loan upon default and to proceed against [debtor's] residence by foreclosure and public sale, and the right to bring an action to recover any deficiency remaining after foreclosure." *Nobleman*, 508 U.S. at 329. Conversely, absent special protection, section 1322(b)(2) permits a debtor to modify any of the listed rights. Thus chapter 13 explicitly allows debtors to modify the rights of junior mortgage holders, including avoiding the lien attached to the collateral, if the anti-modification provision of section 1322(b)(2) does not apply. *See In re Zimmer*, 313 F.3d 1220 (9th Cir. 2002); *In re Lane*, 280 F.3d 663 (6th Cir. 2002); *In re Pond*, 252 F.3d 122 (2nd Cir. 2001); *In re Tanner*, 217 F.3d 1357 (11th Cir. 2000); *In re Bartee*, 212 F.3d 277 (5th Cir. 2000); *In re McDonald*, 205 F.3d 606 (3rd Cir. 2000); *In re Griffey*, 335 B.R. 166 (B.A.P. 10th Cir. 2005); *In re Mann*, 249 B.R. 831 (B.A.P. 1st Cir. 2000). The availability of a discharge is not a prerequisite to the application of section 506(a) and 1322(b)(2).

    **A.**    **In this case, 21st Mortgage Corporation does not have an "allowed secured claim," and it is therefore not protected by the anti-modification provision of section 1322(b)(2).**

---

[1] Under chapter XIII of the Bankruptcy Act of 1898, a repayment plan could not be approved unless every secured creditor that would receive payments in the plan consented to it. See Bankruptcy Act of 1898, §§ 651-52, 11 U.S.C. §§ 1051-52 (1976).

The starting point in this analysis is a determination of the status of 21st Mortgage Corporation's claim as secured or unsecured under section 506(a).  *See Nobleman v. American Sav. Bank*, 508 U.S. 324 (1993).  Section 506(a) is designed to deal with the situation, not uncommon in bankruptcy, where the lien amount exceeds the current value of the property.  In relevant part, section 506(a) provides:

> (a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest … is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property … and is an unsecured claim to the extent that the value of such creditor's interest … is less than the amount of such allowed claim.

11 U.S.C. § 506(a).  "[T]his section separates an undersecured creditor's claim into two parts – he has a secured claim to the extent of the value of his collateral; he has an unsecured claim for the balance of his claim."  H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 356 (1977) (506 effectively "abolishes the use of the terms 'secured creditor' and 'unsecured creditor' and substitutes in their places the terms 'secured claim' and 'unsecured claim.'").

The Supreme Court has repeatedly explained that in the reorganization chapters of bankruptcy, section 506 "governs the definition and treatment of secured claims, i.e., claims by creditors against the estate that are secured by a lien on property" and that for bankruptcy purposes "a claim is secured only to the extent of the value of the property on which the lien is fixed." *United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, 241 (1989) (chapter 11).  In *Nobleman v. American Sav. Bank*, the Supreme Court held that in chapter 13 whether a claim secured by residential property is entitled to protection from modification under section 1322(b)(2) is determined by looking to section 506(a).  The Court stated that if the lien is supported by at least some value, the lien holder is the "holder of a secured claim" under the Bankruptcy Code, and its claim may be entitled to protection under 1322(b)(2).  *Nobelman*, 508 U.S. at 329 ("The portion

of the bank's claim that exceeds $23,500 is an 'unsecured claim componen[t]' under § 506(a)"). However, implicit in the *Nobelman* decision is the corollary principal that if the lien has no true economic worth based on the value of the underlying collateral, and is therefore totally unsecured, then the anti-modification provision does not come into play and the claim may be modified because the creditor is not the holder of an allowed secured claim. While not yet addressed by the Seventh Circuit Court of Appeals, this corollary principal has been adopted by six other courts of appeals and two bankruptcy appellate panels. *See In re Zimmer*, 313 F.3d 1220 (9th Cir. 2002); *In re Lane*, 280 F.3d 663 (6th Cir. 2002); *In re Pond*, 252 F.3d 122 (2nd Cir. 2001); *In re Tanner*, 217 F.3d 1357 (11th Cir. 2000); *In re Bartee*, 212 F.3d 277 (5th Cir. 2000); *In re McDonald*, 205 F.3d 606 (3rd Cir. 2000); *In re Griffey*, 335 B.R. 166 (B.A.P. 10th Cir. 2005); *In re Mann*, 249 B.R. 831 (B.A.P. 1st Cir. 2000). The majority of lower courts in the Seventh Circuit have reached the same conclusion, including this Court in *In re Anderson (Anderson v. Harris, N.A.)*, Case No. 10 B 45294, Adv. No. 10 A 02467 (2011); *see also In re King*, 290 B.R. 641, 646 (Bankr. C.D. Ill. 2003), and cases cited; In re Fair, B.R. 853 (2011). As a matter of common sense, a lien that attaches to nothing provides no security to the lien holder.

In this case, the parties appear to agree that the lien held by 21st Mortgage Corporation is presently not supported by any value in the collateral. Applying section 506(a), 21st Mortgage Corporation is not the holder of an "allowed secured claim" and is not entitled to protection of the anti-modification provision.

**B.    Debtor may modify 21st Mortgage Corporation's claim by avoiding the lien even if no discharge is available to him.**

The only limitation on the Debtor's ability to modify the rights of 21st Mortgage Corporation in chapter 13 is the anti-modification provision of section 1322(b)(2). Nothing in the Code prevents Debtor, who is ineligible for a discharge, from enjoying all the rights of a chapter

13 debtor, including the right to strip off. *See Tran*, 431 B.R. at 235; *see also In re Frazier*, 2011 Bankr. LEXIS 78 (Bankr. E.D. Cal. 2011) (allowing strip off of wholly unsecured lien on residential property); *In re Grignon*, 2010 Bankr. LEXIS 4279 (Bankr. D. Or. 2010) (overruling trustee's objection and confirming chapter 13 plan stripping off wholly unsecured junior lien in no discharge chapter 13); *Hart v. San Diego Credit Union*, 2010 U.S. Dist. LEXIS 130761 (S.D. Cal. 2010) (availability of discharge irrelevant to ability to modify lien where right to modify stems from status of claim under section 506(a)). Rather, the right to strip off a wholly unsecured junior lien "is conditioned on the debtor's obtaining confirmation of, and performing under, a chapter 13 plan that meets all the statutory requirements." *Tran*, 431 B.R. at 235; *Hart*, 2010 U.S. Dist. LEXIS 130761, at * 19 (strip-off of wholly unsecured lien under section 506(d) is effective upon confirmation of Plan even though debtor not entitled to discharge under section 1328(f)(1)).

The availability of a discharge under section 1328(f) is not relevant to whether the debtor may modify creditors' claims in chapter 13. The bankruptcy discharge eliminates the debtor's personal liability for a discharged debt. 11 U.S.C. § 524(a). It prevents creditors from beginning or continuing actions against the debtor to collect the amount owed to it by the debtor prior to bankruptcy. The discharge has no effect on liens one way or another. Because the discharge only affects personal liability and has no effect on liens, it can not be a precondition for modifying liens if a chapter 13 debtor has satisfied all statutory requirements for plan confirmation and successfully performs that plan.

**III.    *Jarvis*, and the cases that follow it, rest on a weak foundation because *Jarvis* misapplies both *King* and *Lilly* in reaching its conclusion that a chapter 13 discharge is necessary to strip a lien.**

*In re Jarvis*, 390 B.R. 600 (Bankr. C.D. Ill. 2008) was the first case to address the issue of lien stripping in a no discharge chapter 13. Subsequently, several courts have followed *Jarvis* in

holding that a discharge is necessary to strip a lien in chapter 13. *See In re Trujillo*, 2010 WL 4669095 (Bankr. M.D. Fla. 2010); *In re Colbourne*, 2010 WL 4485508 (Bankr. M.D. Fla. 2010); *In re Mendoza*, 2010 WL 736834 (Bankr. D. Colo. 2010); *In re Blosser*, 2009 WL 1064455 (Bankr. E.D. Wis. 2010). However, an analysis of the court decisions underlying *Jarvis* demonstrates that these cases rest on a shaky foundation.

With no direct precedent to work from, the *Jarvis* court relied on *In re King*, 290 B.R. 641, 646 (Bankr. C.D. Ill. 2003), and *In re Lilly*, 378 B.R. 232 (Bankr. C.D. Ill. 2007), to reach its conclusion. *King* is cited for the proposition that lien avoidance is contingent upon the debtor completing the plan and receiving a discharge. *Jarvis*, 390 B.R. at 604. However, the *Jarvis* court acknowledges that pre-BAPCPA debtors who completed their plans as a matter of course received a general discharge. In other words, the discharge, except in the case of hardship, followed automatically from the completion of the chapter 13 plan. In interpreting *King*, *Jarvis* mistakenly creates two necessary conditions to lien avoidance (plan completion and discharge) when previously the second condition (the discharge) was purely derivative of the first (plan completion). Other pre-BAPCPA cases, not cited by *Jarvis*, simply leave off the derivative condition (discharge) and state that lien avoidance only requires completion of the debtor's chapter 13 plan. *See In re Feher*, 202 B.R. 996 (Bankr. S.D. Ill. 1996) (cram down premises on "debtors' successful completion of their chapter 13 plan payments"); *In re Gibbons*, 164 B.R. 207 (Bankr. D.N.H. 1993) (lien avoidance "contingent on full performance of the plan"). As noted above, the discharge determines only whether any personal liability on a debt is eliminated. 11 U.S.C. § 524(a). It has no effect on liens one way or the other. Thus, *Jarvis* overreaches in concluding that "modification has traditionally only been achieved through a discharge."

Similarly, *Jarvis* relies on *In re Lilly*, 378 B.R. 232 (Bankr. C.D. Ill. 2007) for the proposition that, without a discharge, modifications to a creditor's rights imposed by the plan are not permanent and have no binding effect once the term of the plan ends. As with *King*, the *Jarvis* court acknowledges that *Lilly* is distinguishable because the decision rests on section 1325(a)(5) which relates to the treatment of allowed secured claims. *Jarvis*, 390 B.R. at 605. The *Jarvis* court correctly recognized that *Lilly* involved a creditor with an allowed secured claim, whereas junior liens unsupported by value in the collateral do not achieve the same status. *Id.* Nevertheless, the *Jarvis* court found persuasive *Lilly*'s analysis of the modification of creditor's rights. *Lilly*'s analysis, in turn, relied on three cases – *Place*, *Holway*, and *Ransom* – to support the proposition that modifications to a creditor's rights without a discharge were not permanent. However, as explained below, the cases relied on by *Lilly* do not support the conclusion reached by *Lilly*; and thus *Lilly* provides a weak legal basis for *Jarvis* and its followers.

*In re Place*, 173 B.R. 911 (Bankr. E.D. Ark 1994), deals with lien stripping in a chapter 7 case, not a chapter 13 cases as indicated in the *Lilly* citation to *Place*. See *Lilly*, 378 B.R. at 236. The *Place* court found the matter governed by *Dewsnup* and denied the debtor's motion to avoid the lien. *Place*, 173 B.R. at 912. *Place* does not stand for the longstanding principle related to the modification of creditor's rights in chapter 13 that *Lilly* claims and *Jarvis* relies upon. *In re Ransom*, 336 B.R. 790 (B.A.P. 9th Cir. 2005), addresses the ability of a debtor to discharge a student debt in a chapter 13 plan and had nothing to do with liens.[2] Lastly, in *In re Holway*, 237 B.R. 217 (Bankr. M.D. Fla. 1999), the debtors received a discharge after converting to chapter 7, but did not complete their plan payments. The *Holway* court states that only debtors who

---

[2] Subsequent to *Lilly*, the BAP decision in Ransom was vacated in light of the Ninth Circuit's opinion in *Espinosa v. United Student Aid Funds*, 553 F.3d 1193 (9th Cir. 2008), aff'd, 130 S. Ct. 1367 (2010), which held that provisions of the confirmed plan have a preclusive effect and may modify a creditor's rights.

successfully complete their chapter 13 plans enjoy the unique ability to pay their tax liability without the penalties and interest normally associated with tax debt.  *Id.* at 219.  As in *King*, *Holway* treats the chapter 13 discharge and completion of chapter 13 plan payments as interchangeable concepts.  It does not follow from *Holway* that modification of a creditor's rights is necessarily conditioned upon a chapter 13 discharge, as opposed to completion of chapter 13 plan payments.  The majority of cases holding lien avoidance is contingent on eligibility for a discharge rely on *Jarvis*, which in turn relies on *King* and *Lilly*, which rely on *Place*, *Ransom*, and *Holway*.  *See In re Trujillo*, 2010 WL 4669095 (Bankr. M.D. Fla. 2010); *In re Colbourne*, 2010 WL 4485508 (Bankr. M.D. Fla. 2010); *In re Mendoza*, 2010 WL 736834 (Bankr. D. Colo. 2010); *In re Blosser*, 2009 WL 1064455 (Bankr. E.D. Wis. 2010); *see also In re Casey*, 428 B.R. 519 (Bankr. S.D. Cal. 2010) (relying on the reasoning in *Lilly*, *Place*, *Holway* and *Ransom*).  At bottom, the weak foundation upon which this stack of cases is built cannot support a requirement that a chapter 13 discharge is necessary to avoid lien for which is not supported by value in the collateral.

Pre-BAPCPA case law demonstrates that plan completion was the critical condition for lien avoidance and that discharge was often a sloppy shorthand for plan completion.  Post-BAPCPA, plan completion (or a finding of hardship under 1328(b)) remains necessary, but not always sufficient for a discharge.  11 U.S.C. § 1328(f).  It is logical error, however, to assume lien avoidance now depends on a discharge rather than plan completion.

**IV.    The Valuation Order is not a final, appealable order.**

A final order ends litigation on the merits "leaving nothing to be done but execute the judgment."  *In re Donovan*, 532 F.3d 1134, 1136 (11th Cir. 2008).  Finality is interpreted more flexibly in bankruptcy cases.  *Id*.  Because a bankruptcy is an aggregation of controversies, "[i]t is generally the particular adversary proceeding or controversy that must have been finally resolved

rather than the entire bankruptcy litigation." *Commodore Holdings, Inc. v. Exxon Mobile Corp.*, 331 F.3d 1257, 1259 (11th Cir. 2003). But a final order must nonetheless "completely resolve all of the issues pertaining to a discrete claim …" *In re Atlas*, 210 F.3d 1305, 1308 (11th Cir. 2000). This standard is met where a court has "resolved the litigation, decided the merits, determined the rights of the parties, settled liability or established damages." *In re Ashoka Enters., Inc.*, 156 B.R. 343, 345 (S.D. Fla. 1993).

Debtor's Valuation Motion was filed pursuant to § 506(a) of the Bankruptcy Code. Section 506(a) addresses two processes that work hand in hand: bifurcation and valuation. Bifurcation, the subject of § 506(a)(1)'s first sentence, is the separation of an undersecured creditor's claim into two parts: the portion secured by the value of the debtor's collateral and an unsecured remainder. 11 U.S.C. § 506(a)(1). Valuation, the subject of § 506(a)(1)'s second sentence, is the process by which the value of the debtor's collateral is determined. *Id*. The Valuation Order in this case both valued Debtor's property at $305,000.00 and bifurcated 21st Mortgage Corporation's claim, per Debtor's Valuation Motion. But not every order on a motion to value is final. *See, e.g., Sain v. Isles at Bayshore Master Ass'n, Inc.*, 2014 U.S. Dist. LEXIS 12219, 2014 WL 357200 (S.D. Fla. 2014). Determining the amount and status of 21st Mortgage Corporation's claim cannot be accurately characterized as having "resolved the litigation, decided the merits, determined the rights of the parties, settled liability, or established damages." *In re Ashoka Enters., Inc.*, 156 B.R. at 345.

**V.     The Valuation Order is not entitled to preclusive effect.**

Under the doctrine of claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Highway J Citizens Grp., v. U.S. Dep't. of Tramp.*, 456 F.3d 734, 741 (7th Cir. 2006)

(quoting *Allen v. McCurry*, 449 U.S. 90, 94, 101 S. Ct. 411, 66 L.Ed. 2d 308 (1980)). The doctrine protects against the "expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153-54, 99 S. Ct. 970, 59 L. Ed. 2d 210 (1979). It also reflects the fundamental policy "that there be an end to litigation," *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 401-02, 101 S. Ct. 2424, 69 L. Ed. 2d 103 (1981), a policy that is "particularly strong in the bankruptcy context," *Hawxhurst v. Pettibone Corp.*, 40 F.3d 175, 180 (7th Cir. 1994).

Claim preclusion under federal law has three elements: (1) an identity of the parties or their privies; (2) an identity of the causes of action; and (3) a final judgment on the merits. *Czarniecki v. City of Chicago*, 633 F.3d 545, 548 (7th Cir. 2011); *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 851 (7th Cir. 2009); *Ross ex rel. Ross v. Board of Educ. Of Twp., H.S. Dist. 211*, 486 F.3d 279, 283 (7th Cir. 2007); *Highway J Citizens Grp.*, 456 F.3d at 741; *Maher v. Federal Deposit Ins. Corp.*, 441 F.3d 522, 526 (7th Cir. 2006). As previously discussed, the Valuation Order was not final; and therefore lacks preclusive effect.

## CONCLUSION

Longstanding principles of chapter 13 that allow debtors the broad right to modify creditors' claims and the absence of any statutory language requiring a discharge to avail themselves of those rights, dictate that wholly unsecured liens may be stripped off in chapter 13 cases regardless of whether the debtor is eligible for a discharge. As the discharge injunction prohibits an act to collect a discharged debt from a debtor, the confirmation order prohibits any attempt to enforce a void mortgage lien against the creditor's former collateral. *See In re Jones*, 2017 Bankr. LEXIS 2984, 2007 WL 2480494, *2 (Bankr. E.D. La. 2007) (holding "[a]n order of

confirmation defines the rights of the debtor and interested parties to payment post-confirmation. The provisions of a confirmed plan bind the debtor and each creditor to its terms. The creditor is not entitled to collect or enforce its claims except as provided by the plan and the confirmation order". A violation of the confirmation is an act of contempt, which, like the discharge injunction, may be remedied by this Court's authority under 11 U.S.C. § 105(a). In this case, the plan language expressly requires 21st Mortgage Corporation to take action following the completion of the chapter 13 case to remove the void mortgage from the real property records. 21st Mortgage Corporation's failure to do so, is an act of contempt.

Dated this 22nd day of February, 2019                    Respectfully submitted,

**BRUNO RANIERI**

By: */s/ Joseph S. Davidson*

Joseph S. Davidson
SULAIMAN LAW GROUP, LTD.
2500 South Highland Avenue
Suite 200
Lombard, Illinois 60148
+1 630-575-8181
jdavidson@sulaimanlaw.com

**CERTIFICATE OF SERVICE**

    I hereby certify that on February 22, 2019, I electronically filed the foregoing with the Clerk of the Court for the United States Bankruptcy Court for the Northern District of Illinois by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

                                                              /s/ Joseph S. Davidson