UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In re:                          )  Chapter 13
                                )
BRUNO RANIERI,                  )  No. 15 B 20765
                                )
              Debtor.           )  Judge Goldgar

## MEMORANDUM OPINION

This case shows that the belt-and-suspenders approach to bankruptcy can cause trouble. In his chapter 13 case, debtor Bruno Ranieri stripped off the lien of second mortgagee 21st Mortgage Corp. in two different ways. He confirmed a plan that stripped the lien, and he moved successfully to have the collateral supporting the lien valued at $0.00. But there was a problem. The confirmed plan said the lien would be stripped when Ranieri completed his plan payments. The valuation order said the lien would be stripped when he completed his payments *and* received a discharge. Because Ranieri had a recent chapter 7 discharge, he received no discharge in the chapter 13 case.

When the case ended, 21st Mortgage sent Ranieri a statement for the mortgage debt. Ranieri says that sending the statement violated the confirmation order and asks to have 21st Mortgage held in contempt. In its defense, 21st Mortgage points to the valuation order. Because that order has preclusive effect, 21st Mortgage argues, its lien was never stripped. So sending the statement was not contempt.

For the reasons discussed below, the confirmation order controls here. Ranieri's motion will therefore be granted and 21st Mortgage held in contempt. It can purge the contempt by releasing its lien.

## 1. Jurisdiction

The court has subject matter jurisdiction under 28 U.S.C. § 1334(a) and the district court's Internal Operating Procedure 15(a). This is a core proceeding. 28 U.S.C. § 157(b)(2)(A); *see In re Castle Home Builders, Inc.*, 520 B.R. 98, 106 (Bankr. N.D. Ill. 2014) ("The Court is empowered by 11 U.S.C. § 105 to ensure compliance with the terms of its orders.").

## 2. Background

The relevant facts are taken from the parties' papers, Ranieri's schedules in his two bankruptcy cases, and the court's docket and claim register in both cases.[1] No facts are in dispute.

Bruno Ranieri owned and presumably still owns a residence in Mundelein, Illinois. Two mortgages encumbered the property. U.S. Bank held the first mortgage. 21st Mortgage held the second.

In December 2013, Ranieri filed a chapter 7 bankruptcy case, No. 13 B 48986. The case was brief and uneventful. The trustee found no assets to administer and filed a "no distribution" report. (Ch. 7 Dkt. No. 10).[2] Ranieri received his discharge in April 2014. (*Id.* Dkt. No. 12). The discharge eliminated his personal liability for debts he owed as of the petition date, *see* 11 U.S.C. § 727(b), including his personal liability for the two mortgages, *Johnson v. Home State Bank*, 501 U.S. 78, 82-83 (1991).

A little over a year later, Ranieri filed this chapter 13 case, No. 15 B 20765. In his

---

[1] A bankruptcy court can take judicial notice of its own records, *In re Woodmar Realty Co.*, 294 F.2d 785, 788 (7th Cir. 1961), including a debtor's schedules, *Frierdich v. Mottaz*, 294 F.3d 864, 870 (7th Cir. 2002).

[2] Docket entries in the chapter 7 case are cited as "Ch. 7 Dkt. No. ___." Docket entries in the chapter 13 case are cited simply as "Dkt. No. ___."

schedules, Ranieri disclosed the Mundelein property, valuing it at $305,000. (Dkt. No. 1). The balance of U.S. Bank's first mortgage he listed as $423,703.89. (*Id.*). The balance of the second mortgage, the mortgage 21st Mortgage held, he listed as $109,055.22. (*Id.*).

Along with his petition and schedules, Ranieri filed a proposed plan. (Dkt. No. 2). Section G of the plan treated 21st Mortgage's lien. In section G, Ranieri (1) valued the lien at $0.00; (2) declared that the lien would be stripped "upon completion of plan payments"; (3) said that 21st Mortgage would receive no payments under the plan (given the lien strip and the discharge of Ranieri's personal liability for the mortgage debt in the chapter 7 case); and (4) obligated 21st Mortgage to release its lien "within 30 days of completion of plan payments." (*Id.*).

21st Mortgage objected to confirmation of the plan, disputing its treatment on the ground that Ranieri had undervalued the property. (Dkt. No. 15). The actual value, 21st Mortgage said, was $380,000 – and although that value would produce no equity to support the second mortgage, U.S. Bank had not yet filed a proof of claim. (*Id.*). 21st Mortgage also observed that Ranieri had not "filed a motion . . . properly requesting that [the] lien be stripped." (*Id.*).

In October 2015, Ranieri accepted 21st Mortgage's invitation, moving under section 506(a) of the Code and Bankruptcy Rule 3012 to determine the value of the Mundelein property and strip the lien. (Dkt. No. 21). In the motion, Ranieri asserted that the property's value was $305,000. (*Id.*). Since the balance of the first mortgage exceeded the value, he said, the second mortgage was wholly unsecured, and 21st Mortgage's lien should be stripped "upon entry of discharge." (*Id.*).

The same day Ranieri filed his Rule 3012 motion, he also proposed an amended plan. (Dkt. No. 23). The amended plan reduced Ranieri's expenses, increased his monthly payments to

-3-

the trustee, increased the estimated total payments on non-attorney priority claims, and increased the estimated trustee fees. (*Id.*). The amended plan's treatment of 21st Mortgage's lien, though, was identical to the lien's treatment in the initial plan. (*Id.*). Section G remained the same.

21st Mortgage objected to confirmation of the amended plan and to the Rule 3012 motion. (Dkt. Nos. 24, 30). But before briefing could be completed, U.S. Bank filed a proof of claim for $423,789 in connection with its first mortgage. (Claim No. 3-1). That claim left the second mortgage lien wholly unsecured, even under 21st Mortgage's higher valuation. A week later, 21st Mortgage withdrew its objections to confirmation and to the Rule 3012 motion. (Dkt. No. 35).

On March 11, 2016, Ranieri's motion to value the property was granted. (Dkt. No. 51). The order granting the motion declared that 21st Mortgage's lien was "entirely unsecured . . . given the value of the property and the amount of senior liens," and any claim of 21st Mortgage would be "treated as an unsecured claim in the Chapter 13 plan." (*Id.*). The order continued: "Upon completion of the Chapter 13 plan and entry of a discharge, the creditor's lien [meaning 21st Mortgage's lien] will be deemed satisfied . . . ." The order was entered on the docket on March 14, 2016. (*Id.*).

At the same March 11 hearing, Ranieri's amended plan – providing that 21st Mortgage's lien would be stripped when Ranieri completed his plan payments – was confirmed. The confirmation order was entered on the docket on March 17, 2016. (Dkt. No. 54).

Meanwhile, back in October 2015, the trustee had objected to Ranieri's discharge because Ranieri had received a chapter 7 discharge just two years earlier. (Dkt. No. 29); *see* 11 U.S.C. § 1328(f)(1). The objection was sustained, and Ranieri was denied a discharge. (Dkt. No. 36).

Ranieri completed his plan payments in September 2018. (Dkt. No. 57). In October

2018, the trustee filed his final report (Dkt. No. 58), and the case was closed without a discharge (Dkt. No. 59).

Thirty days passed after Ranieri's last plan payment, but 21st Mortgage did not release its lien. Instead, shortly after the case closed, it sent Ranieri a statement for $62,925.38, the unpaid balance on the second mortgage.

Ranieri now moves to have 21st Mortgage held in contempt. He maintains that 21st Mortgage has violated the confirmation order because the lien was stripped when he completed his plan payments, and 21st Mortgage failed to release the lien as the confirmed plan required.[3/] 21st Mortgage disagrees. Under the valuation order, it says, the lien was never stripped. The order made discharge a condition of the lien strip, and Ranieri received no discharge. And because that order was entered first, it has preclusive effect.

### 3. Discussion

Ranieri's motion will be granted. 21st Mortgage rightly frames the issue as one of claim preclusion but wrongly concludes that the valuation order has preclusive effect. The confirmation order, not the valuation order, is preclusive. Because the confirmed plan said the lien would be stripped once Ranieri had made all his plan payments and required 21st Mortgage to release its lien, 21st Mortgage violated the confirmation order when it failed to release it.

---

[3/] Technically, it was the amended plan that required 21st Mortgage to release the lien. Failing to release the lien would therefore violate the plan. But violating a confirmed plan also violates the order confirming it. *Rodriguez v. Countrywide Home Loans, Inc. (In re Rodriguez)*, 396 B.R. 436, 442 (Bankr. S.D. Tex. 2008) (explaining that a creditor who "violates the terms of the plan . . . may be subject to liability for violating the order confirming the plan"); *In re Luedtke*, No. 02-35082-svk, 2008 WL 2952530, at *6 (Bankr. E.D. Wis. July 31, 2008) (noting that violating a chapter 13 plan violates the confirmation order); *see, e.g., In re Barton*, 359 B.R. 681, 689-90 (Bankr. N.D. Ill. 2006) (concluding that a creditor violated the confirmation order by not complying with the plan); *McDonald v. Bank Fin. (In re McDonald)*, 336 B.R. 380, 383-85 (Bankr. N.D. Ill. 2006) (same).

### a. Claim Preclusion

Under the doctrine of claim preclusion (or res judicata, an older term), "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). The doctrine protects against "the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153-54 (1979). It also reflects the fundamental policy "that there be an end to litigation," *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 401-02 (1981) (internal quotation omitted), a policy "particularly strong in the bankruptcy context," *Hawxhurst v. Pettibone Corp.*, 40 F.3d 175, 180 (7th Cir. 1994).

The preclusive effect of a federal judgment depends on federal preclusion law. *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008); *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507-08 (2001). Federal law makes a judgment preclusive if there is (1) an identity of the parties or their privies; (2) an identity of the cause of action; and (3) a final judgment on the merits. *United States ex rel. Conner v. Mahajan*, 877 F.3d 264, 271 (7th Cir. 2017); *Adams v. City of Indianapolis*, 742 F.3d 720, 736 (7th Cir. 2014); *Czarniecki v. City of Chicago*, 633 F.3d 545, 548 (7th Cir. 2011).

Both orders here – the confirmation order and the valuation order – meet these requirements. The parties to the proceedings that led to the orders were the same: Ranieri and 21st Mortgage. The "causes of action" were the same because they arose from "the same core of operative facts." *Highway J Citizens Grp. v. U.S. Dep't of Transp.*, 456 F.3d 734, 741 (7th Cir. 2006). Both the Rule 3012 motion and section G of the confirmed plan sought to value the Mundelein property and strip 21st Mortgage's lien. And both orders were final decisions on the

merits. *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 264 (2010) (holding that an order confirming a chapter 13 plan is a "final judgment"); *In re Eaton*, No. EC-05-1261-PaNMa, 2006 WL 6810924, at *3 (B.A.P. 9th Cir. Feb. 28, 2006) (stating that the court had jurisdiction over an appeal from an order granting a motion to value collateral and strip a lien).

Citing *Sain v. Isles at Bayshore Master Ass'n, Inc.*, No. 14-20338-MC, 2014 WL 357200 (S.D. Fla. Jan. 31, 2014), Ranieri asserts that the order granting his motion was not final, but he fails to explain why. Unlike the order in *Sain*, an order that "determined none of the parties' rights," *id.* at *2, the order here (1) declared 21st Mortgage's lien wholly unsecured given the value of the property and the amount of the senior lien, (2) established that 21st Mortgage's claim would be treated as unsecured, and (3) said that upon completion of the plan and entry of discharge the lien would be satisfied. (Dkt. No. 51). The order fixed the parties' rights and resolved the proceeding. Once the order was entered, the court had nothing more to do. The order was as final as any judgment in a civil action seeking the same relief. *See In re McKinney*, 610 F.3d 399, 402 (7th Cir. 2010) (stating that an order in a bankruptcy case is final if it "resolves a proceeding . . . that would be a freestanding lawsuit if there were no bankruptcy").

Because the parties were the same, the causes of action were the same, and the orders were final, either order on its own would be entitled to preclusive effect. But both cannot be preclusive, each nullifying the other. One has to govern. So the question becomes which order governs here.

### b. Inconsistent Judgments

When two parallel proceedings produce judgments, the first judgment entered ordinarily controls. "If two actions are pursued simultaneously the first judgment to be entered is entitled to

res judicata effect without regard to the order in which the two were commenced . . . ." 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4404 at 46 (3d ed. 2016); *see Baek v. Clausen*, 886 F.3d 652, 668 (7th Cir. 2018); *Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832, 838 (7th Cir. 1999) (noting that when cases "proceed in parallel, the first to reach judgment controls the other, through claim preclusion (res judicata)"); Restatement (Second) of Judgments § 14 (1982). Because the valuation order here was entered first (even though both orders were signed the same day), the valuation order would normally control. And in that case, 21st Mortgage's lien would not have been stripped – because the valuation order made Ranieri's discharge a condition of the lien strip, and he received no discharge.[4]

But the first-in-time rule applies when two judgments are consistent. *See Browning v. Navarro*, 887 F.2d 553, 563 (5th Cir. 1989); 18 Wright, Miller & Cooper, *supra*, § 4404 at 36. The orders here were not. Although both found 21st Mortgage's lien wholly unsecured and said the lien would be stripped, the valuation order conditioned the lien strip on Ranieri's completing

---

[4] An order is entered when the clerk dockets it, not when the judge signs it. *See In re ANR-Advance Transp. Co.*, 73 F. App'x 183, 185 (7th Cir. 2003); *Peachtree Lane Assocs., Ltd. v. Granader (In re Peachtree Lane Assocs., Ltd.)*, 188 B.R. 815, 823 n.6 (N.D. Ill. 1995) (noting that a "judgment is entered . . . when the order is docketed"). Although the valuation and confirmation orders were signed on March 11 (when the hearings took place), the valuation order was entered on March 14 but the confirmation order not until March 17.

21st Mortgage finds the different entry dates significant. "[T]here was no other way [the] court could have entered these orders," 21st Mortgage says, because the Rule 3012 motion "had to be resolved" before the plan could be confirmed. (Resp. at 10). Not so. The dates resulted from the way the clerk's office processed the orders. What is more, the Rule 3012 motion did not have to be resolved first – or at all. A chapter 13 debtor has at least two methods for stripping a wholly unsecured junior lien: a plan provision and a Rule 3012 motion. *See generally* Keith M. Lundin & William H. Brown, *Chapter 13 Bankruptcy*, 4th ed., § 128.1, at ¶¶ 14, 22, Sec. Rev. Nov. 4, 2011, www.Ch13online.com. Either will do. Ranieri decided to use both. But he could have used one or the other – and should have.

-8-

his plan payments and on entry of discharge. The plan conditioned it only on completing plan payments.

When two parallel proceedings produce inconsistent judgments, the preclusion rule is reversed. The judgment entered last in time, not first in time, controls. *Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co.*, 121 F.3d 1332, 1335 (9th Cir. 1997) ("When a court is faced with inconsistent judgments, it should give *res judicata* effect to the *last* previous judgment entered.") (internal quotation omitted) (emphasis in original); *Metromedia Co. v. Fugazy*, 983 F.2d 350, 366 (2d Cir. 1992); *Americana Fabrics, Inc. v. L & L Textiles, Inc.*, 754 F.2d 1524, 1529-30 (9th Cir. 1985) (contrasting the first-in-time and last-in-time rules); *Osborn v. Knights of Columbus*, 401 F. Supp. 2d 830, 833 (N.D. Ohio 2005) (same); Restatement (Second) of Judgments § 15; *see also* Ruth B. Ginsburg, *Judgments in Search of Full Faith and Credit: The Last-in-Time Rule for Conflicting Judgments*, 82 Harv. L. Rev. 798, 798 (1969).

Because the confirmation order was entered later, it controls the lien-strip question, governing over the earlier, inconsistent valuation order. And because the confirmation order made completing plan payments the only condition of the lien strip, a condition Ranieri fulfilled, 21st Mortgage's lien was stripped, and 21st Mortgage had to release its lien. Failing to release the lien violated the confirmation order.

To district court regulars, this may seem an odd application of claim preclusion. Claim preclusion is usually raised "in a *separate* case from the one in which the judgment or ruling sought to be used as a bar to further litigation was rendered . . . ." *Amcast Indus. Corp. v. Detrex Corp.*, 45 F.3d 155, 158 (7th Cir. 1995) (emphasis added). When two rulings in the *same* case are involved, the "law of the case" doctrine is what counsels adherence to one over the other. *Payne v. Churchich*, 161 F.3d 1030, 1037 n.8 (7th Cir. 1998); *but see Valley National*, 121 F.3d

at 1336 (holding that the last-in-time rule "applies equally where the second judgment is entered by the same court that entered the first" and both are entered in the same case).

Unlike a civil action in the district court, though, a bankruptcy case is episodic. It involves "an aggregation of individual controversies, many of which would exist as stand-alone lawsuits but for the bankrupt status of the debtor." *Bullard v. Blue Hills Bank*, \_\_\_ U.S. \_\_\_, \_\_\_, 135 S. Ct. 1686, 1692 (2015) (internal quotation omitted). So a final order in a bankruptcy case is not just the law of the case; it has preclusive effect on later proceedings in the same case. *See, e.g., In re Phillips*, 553 B.R. 536, 549 (Bankr. E.D.N.C. 2016); *In re marchFirst, Inc.*, 448 B.R. 499, 510-16 (Bankr. N.D. Ill. 2011); *but see In re Belmonte*, 524 B.R. 17, 26 n.14 (Bankr. E.D.N.Y. 2014). If the three proceedings here – the Rule 3012 motion, the plan confirmation, and the motion for civil contempt – are viewed as three separate civil actions (two that ended in final judgments and one that is ongoing), the claim preclusion problem comes sharply into focus.

21st Mortgage appears to agree that both orders meet the requirements for claim preclusion (since it argues for the first-in-time rule). Still, 21st Mortgage challenges the confirmation order, arguing that a wholly unsecured junior lien can be stripped off only upon discharge. Because Ranieri could not and did not receive a discharge, no lien strip occurred.

This argument is an attack on the confirmation order itself – an order that 21st Mortgage concedes was final. Had 21st Mortgage wanted to make the argument, it should have made it in its objection to confirmation of Ranieri's amended plan. 21st Mortgage did not make it. (*See* Dkt. No. 24). In fact, 21st Mortgage withdrew its objection before the confirmation hearing. (Dkt. No. 35). Confirmation of the amended plan was uncontested.

Having failed to challenge Ranieri's plan then, 21st Mortgage cannot challenge it now. Under section 1327(a) of the Code, "[t]he provisions of a confirmed plan bind the debtor and

-10-

each creditor whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, accepted, or has rejected the plan." 11 U.S.C. § 1327(a). That means "a party with adequate notice of a bankruptcy proceeding cannot ordinarily attack a confirmed plan." *In re Harvey*, 213 F.3d 318, 321 (7th Cir. 2000); *see also Adair v. Sherman*, 230 F.3d 890, 894 (7th Cir. 2000) (stating that "once a bankruptcy plan is confirmed, its terms are not subject to collateral attack"); *In re Chappell*, 984 F.2d 775, 782 (7th Cir. 1993); *In re Pence*, 905 F.2d 1107, 1109-10 (7th Cir. 1990) (holding that a confirmed plan valuing property and requiring the release of a lien was binding). 21st Mortgage plainly had notice of Ranieri's bankruptcy since it was an active participant in the case. The objection to confirmation it tries to raise now is water under the bridge.

Citing *In re Escobedo*, 28 F.3d 34 (7th Cir. 1994), 21st Mortgage counters that a confirmed chapter 13 plan is not binding under section 1327(a) if it violates the Code. In *Escobedo*, the court refused to find binding a confirmed plan that failed to pay priority claims in full, as section 1322(a)(2) requires. *Id.* at 35. Because section 1325(a)(1) declares that a plan cannot be confirmed unless it complies with the Code, the court held that "confirmation was nugatory," and the debtor's plan had "no res judicata effect as to the omitted priority claims." *Id.* In stripping the lien without a discharge, 21st Mortgage maintains, Ranieri's plan violated the Code. So the confirmation order is not binding, no matter what section 1327(a) says.

The problem with *Escobedo* is that the Supreme Court overruled it, implicitly if not explicitly, in *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010). The bankruptcy court in *Espinosa* had confirmed a plan that proposed to pay part of the debtor's student loan debt and discharge the rest – even though section 523(a)(8) of the Code made the debt non-dischargeable unless repayment was an undue hardship, and the bankruptcy court found no

-11-

hardship. The plan, in other words, did not comply with the Code any more than the plan in *Escobedo*. Even so, the Court held, the creditor had no right to relief from the confirmation order. Although confirming the plan was "legal error," the confirmation order remained "enforceable and binding" because the creditor "had notice of the error and failed to object or timely appeal." *Id.* at 275. *Espinosa* contradicts *Escobedo* and controls here. *See United States v. Wahi*, 850 F.3d 296, 302 (7th Cir. 2017) ("When an intervening Supreme Court decision unsettles our precedent, it is the ruling of the Court that sits on 1 First Street that must carry the day."). Legal error or not, the order confirming Ranieri's plan is binding.[5]

### c. Relief

21st Mortgage's failure to release its lien as the plan required violated the confirmation order. 21st Mortgage will therefore be held in civil contempt. *Rockwell Graphic Sys., Inc. v. DEV Indus., Inc.*, 91 F.3d 914, 920 (7th Cir. 1996) (stating that the purpose of civil contempt proceedings is to "secure compliance with a prior court order"). It can purge the contempt by releasing its lien.

No other relief will be granted. On top of the release, Ranieri asks for actual and punitive damages as well as attorney's fees and costs. True, civil contempt's function is compensatory as well as coercive, *U.S. S.E.C. v. Hyatt*, 621 F.3d 687, 692 (7th Cir. 2008), and in an appropriate

---

[5] Not that the order was legal error. Though courts have split on the question, the better view (and one gaining more and more adherents) is that a debtor can indeed strip off a wholly unsecured junior lien upon completing his plan payments even if he is ineligible for a discharge. *See, e.g., In re Scantling*, 754 F.3d 1323, 1330 (11th Cir. 2014) (holding that "the debtor's ineligibility for a discharge is irrelevant to a strip off"); *Branigan v. Davis (In re Davis)*, 716 F.3d 331, 337-39 (4th Cir. 2011); *In re Boukatch*, 533 B.R. 292, 300 (B.A.P. 9th Cir. 2015); *In re Cain*, 513 B.R. 316, 321-22 (B.A.P. 6th Cir. 2014) (describing this view as the "growing consensus"); *In re Fair*, 450 B.R. 853, 856-58 (E.D. Wis. 2011); *Monroe v. Seaway Bank & Trust Co. (In re Monroe)*, 509 B.R. 613, 629 (Bankr. E.D. Wis. 2014); *In re Okosisi*, 451 B.R. 90, 99-100 (Bankr. D. Nev. 2011).

case the aggrieved party can be awarded actual damages and attorney's fees, *see F.T.C. v. Trudeau*, 579 F.3d 754, 769 (7th Cir. 2009); *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 738 (7th Cir. 1999). But since "[c]ivil contempt is intended to rectify, not to punish," *In re Direct Media Power, Inc.*, 582 B.R. 739, 751 (Bankr. N.D. Ill. 2018), punitive damages are unavailable, *Paloian v. Grupo Serla S.A. de C.V.*, 433 B.R. 19, 41 (N.D. Ill. 2010). And to justify actual damages, a party must have suffered some compensable loss. *S.E.C. v. First Choice Mgmt. Servs., Inc.*, 709 F.3d 685, 688 (7th Cir. 2013). Ranieri has alleged none.

As for attorney's fees, an award is discretionary, not automatic. *Tranzact Techs., Inc. v. 1Source Worldsite*, 406 F.3d 851, 855 (7th Cir. 2005). The attorney's fees Ranieri has incurred pursuing this civil contempt proceeding are as much his own fault as the fault of 21st Mortgage. Had he not chosen to take his belt-and-suspenders approach, stripping 21st Mortgage's lien in the plan as well as through the Rule 3012 motion, and then failed to notice the inconsistency between the plan and the order granting the motion, civil contempt would never have been necessary. No fees will be awarded.

### 4. Conclusion

The motion of debtor Bruno Ranieri to hold 21st Mortgage Corp. in contempt is granted. 21st Mortgage will be given an opportunity to purge the contempt by releasing its lien. A separate order will be entered consistent with this opinion.

Dated: March 29, 2019

                                                A. Benjamin Goldgar
                                                United States Bankruptcy Judge